**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF MASSACHUSETTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF DEFENSE, <br><br> Defendant. | Civil Action No. _____ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      The Trump Administration has reportedly assigned military personnel to decide the rights of civilians arrested inside the United States, including whether or not they have a right to remain in this country.

2.      Specifically, the Trump Administration appears to have ordered active-duty military personnel to work as Temporary Immigration Judges in the Immigration Courts, inside the Department of Justice.

3.      Immigration Judges exercise extraordinary authority over civilians arrested inside the United States.  U.S. Immigration and Customs Enforcement ("ICE") and other federal agencies routinely arrest people inside the United States and accuse them of being noncitizens subject to deportation.  Immigration Judges are supposed to exercise "independent judgment" to decide whether those accusations are actually true.  *See* 8 C.F.R. § 1003.10(b).

4.      Among other things, Immigration Judges are generally responsible for deciding whether the accused person is actually subject to deportation, and, if so, whether the accused person is eligible for any relief from deportation and whether any such relief should be granted.

1

Immigration Judges are also generally responsible for deciding whether the accused person should be jailed while the immigration proceedings are being conducted, a process that often takes months or years. Deportation orders are ultimately signed by an Immigration Judge, in most cases.

5. Thus, it appears that the Trump Administration has ordered active-duty military personnel to adjudicate the physical liberty and potential expulsion of innumerable civilians residing inside the United States who are brought before the Immigration Courts.

6. In October 2025, the American Civil Liberties Union of Massachusetts, Inc. ("ACLUM") submitted Freedom of Information Act ("FOIA") requests for information about this new program.

7. The U.S. Department of Defense ("DOD") has failed to respond to these requests as required by law.[1] Among other things, DOD is withholding the following records:

- Memorandum of August 27, 2025: "Identification of Judge Advocate General Officers and Civilian Attorneys for Potential Detail to the Department of Justice;"

- Memorandum of August 27, 2025: "Potential Department of Defense Support for Immigration Adjudication;" and

- Memorandum of Agreement Between the Department of Justice Executive Office for Immigration Review and the Department of War for the Detailing of Temporary Immigration Judges.

8. These records have been identified as responsive to ACLUM's FOIA request, have been segregated for review, and do not appear to be subject to any FOIA exemption. Yet DOD has not produced them.

---

[1] DOD now refers to itself as the "Department of War." Under current law, this department is named the "Department of Defense." *See, e.g.*, 10 U.S.C. §§ 111(a), 113(a)(1). ACLUM will refer to this department as DOD in accordance with current law.

9.      Accordingly, ACLUM brings this action against DOD under FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, for production of these identified records and all other records responsive to ACLUM's FOIA requests.

10.      There is an urgent need for information concerning this program.  Since January 2025, the Trump Administration has reportedly terminated over 100 civilian Immigration Judges.[2] At the same time, the Trump Administration also granted itself the authority to appoint Temporary Immigration Judges without significant immigration law or administrative law experience.[3]  The Trump Administration is making aggressive use of this new authority: DOD reportedly announced the assignment of up to 600 military personnel to serve as Temporary Immigration Judges.[4]  Recent reporting indicates that DOD may soon begin activating additional military personnel for this work.[5]  On information and belief, at least three military service members have already been ordered to work as Temporary Immigration Judges in immigration courts in Massachusetts and are, in fact, hearing and deciding cases.

11.      Our system of government reflects the "deeply rooted and ancient opposition in this country to the extension of military control over civilians." *See Reid v. Covert*, 354 U.S. 1, 23-24,

---

[2] Nicholas Nehamas et al., *How Trump Purged Immigration Judges to Speed Up Deportations*, N.Y. TIMES (updated Apr. 13, 2026), https://www.nytimes.com/2026/04/09/us/politics/trump-miller-immigration-judges-purge.html.

[3] "Designation of Temporary Immigration Judges," 90 Fed. Reg. 41883, 41884 (Aug. 28, 2025).

[4] Konstantin Toropin, *Pentagon authorizes up to 600 military lawyers to serve as temporary immigration lawyers*, ASSOCIATED PRESS (updated Sept. 2, 2025), https://apnews.com/article/pentagon-immigration-judges-trump-pete-hegseth-b07950833591270b926ad86ede8b961f.

[5] Celine Castronuovo & Ben Penn, *DOD Moves to Order Military Lawyers to Be Immigration Judges (3)*, BLOOMBERG L. (updated June 30, 2026), https://news.bloomberglaw.com/us-law-week/hegseth-moves-to-order-military-lawyers-to-be-immigration-judges.

33 (1957) (plurality op.) ("The Founders envisioned the army as a necessary institution, but one dangerous to liberty if not confined within its essential bounds."); *see also* 18 U.S.C § 1385 (Posse Comitatus Act).  The apparent assignment of active-duty military personnel to order detention and deportation thus implicates significant constitutional and other legal questions.[6]  It also stands in stark contrast to the Framers' deliberate exclusion of the military from domestic law enforcement activities within our constitutional design.[7]

12.    ACLUM seeks the Court's intervention to order production of public records concerning the operation of this program to inform the public about its alleged justifications and parameters.

## JURISDICTION AND VENUE

13.    The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

14.    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

---

[6] *See* Steven J. Lepper, *Hypothetical Legal Review on Judge Advocates Serving as Immigration Judges*, JUST SEC. (Dec. 16, 2025), https://www.justsecurity.org/126460/olc-memo-judge-advocates-immigration-judges/; Suzanne Monyak & Celine Castronuovo, *DOJ Memo Draws Doubts on Military Lawyers as Immigration Judges*, BLOOMBERG L. (Nov. 18, 2025), https://news.bloomberglaw.com/us-law-week/doj-memo-draws-doubts-on-military-lawyers-as-immigration-judges; Margy O'Herron, *Using Military Lawyers as Immigration Judges Is Ill-Advised and Potentially Illegal*, BRENNAN CTR. FOR JUST. (Sept. 29, 2025), https://www.brennancenter.org/our-work/analysis-opinion/using-military-lawyers-immigration-judges-ill-advised-and-potentially; Adriel Orozco, *Trump Administration Appoints Hundreds of Unqualified Military Lawyers to Serve as Immigration Judges*, AM. IMMIGR. COUNCIL (Sept. 5, 2025), https://www.americanimmigrationcouncil.org/blog/trump-appoints-military-lawyers-to-serve-as-immigration-judges/; Andrew Turley & John Ewers, *Why It's Wrong to Involuntarily Mobilize Reserve JAGs for Immigration Cases*, JUST SEC. (July 16, 2026), https://www.justsecurity.org/146560/involuntarily-mobilize-military-lawyers-wrong/.

[7] *See* Br. of ACLU et al. as *Amici Curiae* at 5-11, *Trump v. Illinois*, No. 25A443 (Nov. 10, 2025), https://www.supremecourt.gov/DocketPDF/25/25A443/384083/20251110155544937_2025.11.10%20ACLU%20et%20al%20Amicus%20Brief_Illinois%20v%20Trump%2025A443%20Final.pdf; *see also* The Declaration of Independence para. 14 (1776) ("He has affected to render the Military independent of and superior to Civil power.").

15.     Venue is proper in the District of Massachusetts under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

16.     Plaintiff ACLUM is a Massachusetts non-profit corporation with its principal place of business in Boston, Massachusetts.  ACLUM's mission includes defending constitutional freedoms and educating the public about civil liberties and government activities.  ACLUM works to improve and enforce principles of transparency and accountability in government.  Obtaining information about government activity, analyzing that information, and disseminating it is a critical and substantial component of ACLUM's mission.

17.     Defendant DOD is an executive department of the government of the United States.  DOD is an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). The records ACLUM seeks are maintained within DOD and are subject to DOD's control.

## FACTS

A. <u>Immigration Judges decide whether people arrested in the United States will be jailed during deportation proceedings, and whether they will ultimately be deported.</u>

18.     ICE and other federal agencies routinely arrest people inside the United States and accuse them of being noncitizens subject to deportation.  Being present in the United States without immigration status is not generally a crime, and so these are civil accusations.  After arrest, the arresting agency typically records these accusations in civil charging document called a Notice to Appear ("NTA").  The NTA is then typically filed in Immigration Court to open a new civil immigration case.  *See* 8 C.F.R § 1003.14.  The Immigration Courts are part of the Executive Office of Immigration Review, which is in turn part of the Department of Justice.

19.     The Immigration Courts are typically staffed with Immigration Judges ("IJs"), who are civilian employees of the Department of Justice.  IJs are required to "exercise their

independent judgement and discretion" and to resolve the questions before them in a "impartial manner." *See* 8 C.F.R. § 1003.10(b).

20. IJs perform numerous important duties that directly affect the rights and liberty of people arrested inside the United States.

21. For example, after a person has been accused of being a noncitizen subject to deportation, IJs generally are required to conduct proceedings to decide whether those accusations are true and whether the person should, in fact, be deported. *See* 8 U.S.C. § 1229a; 8 C.F.R. § 1003.9(d). The outcome of a civil immigration case is not a foregone conclusion: some people are found to be U.S. citizens, some people are found to be noncitizens who are not subject to deportation, and some people are found to be noncitizens subject to deportation who should nevertheless receive relief from deportation on one of many potential grounds. Some other civil immigration cases are dismissed, terminated, or closed with no finding at all.

22. In those cases where a person is ultimately ordered deported, the IJ is typically the officer who makes that decision and signs that order. *See* 8 U.S.C. §§ 1101(a)(47); 1229a(a)(1), 1229a(c)(4).

23. Many people arrested by ICE and other agencies on civil immigration charges are eligible for release from jail while the civil immigration case is pending. IJs determine who is eligible for release and, for those who are, hold detention hearings (often called "bond hearings") to determine if the person will be jailed or released while the case is being resolved. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19. The IJ's decision in the bond hearing is of exceptional consequence to a person's liberty, because civil immigration cases often take months and even years to complete. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 30 (1st Cir. 2021) (explaining civil

6

immigration detention during proceedings is "frequently prolonged" and, in the New England Immigration Courts, one in four detainees was incarcerated for two years or longer).

24.     In the last year and a half, the Trump Administration has fired large numbers of IJs who were deciding cases in the Immigration Courts.  Many of these judges had reportedly taken actions disfavored by the Trump Administration.[8]  At the same time, the Department of Justice is actively recruiting new IJs to serve in positions it terms "deportation judges."[9]  These actions, among others, suggest that the Trump Administration is attempting to change the composition of the Immigration Courts to secure rulings more favorable to the government and less favorable to people arrested by ICE.

B.  The Trump Administration appears to be ordering active-duty military personnel work as Temporary Immigration Judges in the Immigration Courts, where they will decide the rights of civilians arrested inside the United States.

25.     Since 2014, the Department of Justice has been authorized by regulation to supplement its IJs with Temporary Immigration Judges ("TIJs").  However, applicants to be TIJs were required to meet certain minimum experience requirements.  For more than a decade, only former IJs, former members of the Board of Immigration Appeals, certain current or former administrative law judges, and Department of Justice attorneys with at least 10 years of immigration law experience were eligible to serve as TIJs.  *See* 79 Fed. Reg. 39953, 39956 (July 11, 2014).

---

[8] *See, e.g.*, Nehamas et al., *supra* note 2; Alan Gionet, *Fired immigration court judge shares concerns about enforcement of nation's laws*, CBS NEWS (July 16, 2026), https://www.cbsnews.com/colorado/news/immigration-judge-brea-burgie-fired/.

[9] *See* DEP'T OF JUST., https://join.justice.gov/; Meg Satterthwaite & Sang-Min Kim, *Key Trump Deportation Strategies: Removing, Replacing, and Pressuring Immigration Judges*, JUST SEC. (July 17, 2026), https://www.justsecurity.org/147642/trump-deportation-immigration-judges/.

26.     Like IJs, TIJs decide deportation cases and bond hearings, and they are bound by the same requirements to exercise independent judgment in conformance with the law. *See* 8 C.F.R. §§ 1003.10(b); 1003.10(e).

27.     In mid-2025, the Department of Justice appeared to implement a plan to install active-duty military personnel as TIJs.

28.     In August 2025, the Department of Justice abruptly rescinded the experience requirements for TIJs.  The regulations were modified to state that "any attorney" may be appointed as a TIJ. *See* Designation of Temporary Immigration Judges, 90 Fed. Reg. 41883, 41886 (Aug. 28, 2025).

29.     In October 2025, the Department of Justice's Office of Legal Counsel ("OLC") issued an opinion stating that military lawyers could serve as TIJs in certain circumstances.[10]

30.     Around that same time, DOD reportedly authorized up to 600 military service members to serve as TIJs. *See* Toropin, *supra*, note 4.

31.     On information and belief, military service members who are being ordered to serve as TIJs are not merely reservists taking on a new position in their civilian capacity.  Rather, it appears these service members are being ordered to serve as TIJs in an active-duty status. *See, e.g.*, Ex. A (Sept. 2, 2025, Nov. 6, 2025, & Jan. 8, 2026 emails) (internal solicitation for military personnel to accept Active Duty Operational Support ("ADOS") orders for service as TIJs).[11]

---

[10] *Detailing Attorneys to the Department of Justice to Serve as Immigration Judges and Special Assistant United States Attorneys*, 49 Op. O.L.C. ___ (Oct. 23, 2025). https://www.justice.gov/olc/media/1417471/dl.

[11] ADOS orders are a program for "temporary active-duty opportunities," during which the servicemember will "receive full active duty pay and benefits."  *See* "Active Duty Operation Support Orders (ADOS Orders)," MARINE CORPS FORCES RESERVE, (last accessed July 27,

32.     DOD reportedly continues to order military personnel on active duty to serve as TIJs in the Immigration Courts.  *See* Castronuovo & Penn, *supra* note 5. The apparent assignment of active-duty military personnel to adjudicate the physical liberty and potential expulsion of civilians inside the United States raises serious legal questions.

<u>ACLUM's FOIA Requests</u>

33.     Two FOIA requests are the subjects of this lawsuit.

34.     On October 22, 2025, ACLUM submitted a FOIA request to the Office of the Secretary of Defense/Joint Staff ("OSD/JS"), which is part of DOD.  ACLUM's request sought records relating to DOD's assignment of military personnel to serve as TIJs, including agreements, policies, financial documents, communications, activation orders, applications, resumes, and other relevant records.  OSD/JS assigned ACLUM's request case number 26-F-0130.  A true and correct copy of ACLUM's request is attached hereto as Exhibit B.

35.     On December 3, 2025, OSD/JS sent ACLUM an interim response for Request 26-F-0130, which stated, among other things, that OSD/JS would not respond to the request within FOIA's 20-day statutory time period due to "unusual circumstances."  More than six additional months have passed, and OSD/JS has not provided any final response to Request 26-0130, nor has it produced any records in response to that request.  The online FOIA portal for OSD/JS lists the status of Request 26-F-0130 as "In Process.

36.     Also on October 22, 2025, ACLUM submitted the same FOIA request to the Department of the Navy ("DON").  DON assigned this request case number 2026-NavyFOIA-001117.  On or about March 10 or 11, 2026, DON referred ACLUM's request to Headquarters,

---

2026), https://www.marforres.marines.mil/Staff-Sections/General-Staff/G-1-Administration/Active-Billets/Find/ (under "What is ADOS" tab).

U.S. Marine Corps ("USMC").    USMC assigned the referred request file number 2026-USMCFOIA-002677.  USMC has been processing that request and has produced certain records. DON and USMC are not defendants in this lawsuit.

37.    However, USMC has informed ACLUM that it identified three responsive records that do not fall under its cognizance and are instead subject to the control of OSD/JS.  These records are: (1) Memorandum "Identification of Judge Advocate General Officers and Civilian Attorneys for Potential Detail to the Department of Justice" of 27 AUG 25, (2) Memorandum "Potential Department of Defense Support for Immigration Adjudication" of 27 AUG 25, and (3) Memorandum of Agreement Between The Department of Justice Executive Office for Immigration Review and The Department of War For the Detailing of Temporary Immigration Judges. USMC referred these records to OSD/JS "as a matter under [OSD/JS's] cognizance for release determination and direct response to the requester."  On information and belief, these records have already been retrieved, segregated for review, and provided to OSD/JS as enclosures to USMC's referral memorandum.  A true and correct copy of USMC's referral memorandum to OSD/JS is attached hereto as Exhibit C.

38.    On June 12, 2026, OSD/JS acknowledged receipt of the referral by USMC, assigned the referral a new FOIA request case number 26-F-2511, and stated that OSD/JS would not respond to the request within FOIA's 20-day statutory time period due to "unusual circumstances."  Despite multiple inquiries from ACLUM, OSD/JS has not produced the three records referred to it by USMC, nor has it provided any final determination concerning them.  The online FOIA portal for OSD/JS lists the status of Request 26-F-2511 as "In Process."  There appears to be no reason these records should be withheld from the public.

10

**CLAIMS FOR RELIEF**

**COUNT I**
Violation of FOIA, 5 U.S.C. § 552
(Case No. 26-F-0130)

39.     Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

40.     DOD has failed to complete reasonable efforts to search for records pursuant to ACLUM's FOIA request (case number 26-F-0130).

41.     DOD has failed to release any records responsive to ACLUM's FOIA request.

42.     DOD has failed to demonstrate any lawful reason for withholding any responsive records.

43.     DOD's failures to complete adequate searches for responsive records and to produce all non-exempt responsive records violate FOIA.

44.     ACLUM is entitled to injunctive relief requiring DOD to promptly search for and produce all non-exempt records responsive to ACLUM's FOIA request, and to injunctive relief requiring DOD to provide indices justifying the withholding of any responsive records under claim of privilege or exemption.

45.     ACLUM is further entitled to a waiver of all search, review, processing, and duplication fees in connection with ACLUM's FOIA request.

**COUNT II**
Violation of FOIA, 5 U.S.C. § 552
(Case No. 26-F-2511)

46.     Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

11

47. DOD has failed to release records responsive to ACLUM's FOIA request (case number 26-F-2511).

48. DOD has failed to demonstrate any lawful reason for withholding the responsive records.

49. DOD's failures to produce these records violate FOIA.

50. ACLUM is entitled to injunctive relief requiring DOD to immediately produce the responsive records.

51. ACLUM is further entitled to a waiver of all search, review, processing, and duplication fees in connection with ACLUM's FOIA request.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to:

(1) Order Defendant to conduct a search or searches reasonably calculated to uncover all records responsive to ACLUM's FOIA requests;

(2) Order Defendant to produce all non-exempt records responsive to ACLUM's FOIA requests and indices justifying the withholding of any responsive records under claim of privilege or exemption;

(3) Declare DOD's failure to respond to ACLUM's FOIA requests to be in violation of FOIA and declare that ACLUM is entitled to the records sought in ACLUM's FOIA requests;

(4) Declare that ACLUM is entitled to a waiver of all search, review, processing, and duplication fees in connection with ACLUM's FOIA requests;

(5) Award ACLUM attorneys' fees and costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6)    Grant any further relief this Court deems just and proper.

Dated: July 29, 2026                           Respectfully submitted,

                                               */s/ Julian Bava*

                                               Jessie J. Rossman (BBO #670685)
                                               Daniel L. McFadden (BBO #676612)
                                               Julian Bava (BBO #712829)
                                               AMERICAN CIVIL LIBERTIES UNION
                                               FOUNDATION OF MASSACHUSETTS, INC.
                                               One Center Plaza, Suite 850
                                               Boston, MA 02108
                                               (617) 482-3170
                                               jrossman@aclum.org
                                               dmcfadden@aclum.org
                                               jbava@aclum.org

                                               *Counsel for Plaintiff*